[Cite as *In re Guardianship of Dwyer*, 2024-Ohio-2544.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: GUARDIANSHIP OF JAMES P. DWYER | : | APPEAL NOS. C-230462 C-230533 |
| | : | TRIAL NO. 2006004324 |
| | : | *O P I N I O N.* |

Appeals From:   Hamilton County Court of Common Pleas, Probate Division

Judgments Appealed From Are:   Affirmed in Part and Appeal Dismissed in Part in C230533; Appeal Dismissed in C-230462

Date of Judgment Entry on Appeal: July 3, 2024

*Lindhorst & Dreidame Co., LLP,* and *Barry F. Fagel*, for Plaintiffs-Appellees Brian Dwyer, Suzanne Dwyer, and Mary Anne Frischtner,

*Maureen Dwyer*, pro se.

**KINSLEY, Judge.**

{¶1}     This case arises after more than five years of probate litigation between the siblings of the Dwyer family regarding the guardianship of their adult brother, James P. Dwyer ("James").  Fortunately, the record makes clear that all James's siblings care deeply about him, despite disagreeing about his best interest.  But, in a prior order, the probate court removed James's sister, appellant Maureen Dwyer, as one of his co-guardians, after finding she failed to uphold her end of a settlement agreement that outlined a plan for James's finances and medical care.  In this appeal, Maureen challenges a more recent order of the probate court removing her from certain of James's bank accounts and awarding attorney fees to her siblings for the litigation below.  For the following reasons, we dismiss the appeals in part and affirm the judgments of the probate court.

### *Factual and Procedural Background*

{¶2}     Maureen and James are two of the five children of Lorraine and Bernard Dwyer, both of whom are no longer living.  The other children are Brian Dwyer,[1] Mary Anne Frischtner, and Suzanne Dwyer.

#### *The Trusts and Guardianship*

{¶3}     James has Down syndrome.  Prior to their deaths, Lorraine and Bernard made arrangements to provide for James's care and financial well-being.  In 2000, they created The James Dwyer Discretionary Special Needs Trust for James's benefit, appointing Mary Anne as trust advisor and Suzanne as alternate trust advisor.  They also established a community fund Medicaid payback trust account for James.  In addition, Lorraine executed a trust agreement in which she named Bernard as her

---

[1] Brian's name is actually Bernard B. Dwyer, but he uses the name Brian in this litigation.

trustee and left him her home. Upon Bernard's death, the trust was to be distributed to her children equally. However, James's share would be distributed to the James Dwyer Discretionary Special Needs Trust. Lorriane and Bernard were also named by the probate court as James's co-guardians in 2006, although they resigned from this role shortly before their deaths. On December 19, 2013, Maureen was appointed James's guardian. Maureen also became the designated advocate of James's community fund and was added to bank accounts for James, including a stable account and savings account.

### *Guardianship Litigation*

{¶4}    On November 20, 2018, Brian and Mary Anne filed a complaint to remove Maureen as trustee of the Lorriane Dwyer Trust. The complaint alleged that Maureen had breached her duties as trustee, mainly by failing to administer the trust and to sell the family home, in particular. The complaint attributed Maureen's inaction with regard to the family home to a dispute about James's guardianship. At the time, James was living in the home with Mary Anne, who wanted to buy the home from the trust, but Maureen refused in her role as trustee.

{¶5}    On December 17, 2018, Maureen filed an answer and counterclaim. The counterclaim alleged that Mary Anne had moved into the family home without permission and had falsely represented herself as James's guardian.

{¶6}    On April 5, 2019, Brian and Mary Anne, now also joined by Suzanne (collectively "the siblings") filed a motion to remove Maureen as James's guardian.

### *First Settlement Agreement*

{¶7}    Maureen and the siblings were initially able to resolve their differences through a settlement agreement. In an order filed with the court on December 24,

2019, the parties agreed that: (1) the siblings' complaint and Maureen's counterclaims would be dismissed with prejudice; (2) the siblings' motion to remove Maureen as guardian would be withdrawn; (3) Maureen would sell the family home to Mary Anne and her husband, Selden; (4) James would reside with Mary Anne at the family home; (5) Maureen and Mary Anne would cooperate in James's best interest; and (6) Maureen would provide Mary Anne with James's medical records as necessary.

{¶8} On May 26, 2020, the siblings filed a second motion to remove Maureen as guardian of James, to show cause, and for attorney fees. In the motion, the siblings asserted that Maureen had neglected her duties as guardian and was acting against James's best interest by repeatedly threatening to make him move from the family home. The motion also alleged that Maureen had violated several conditions in the December 24, 2019 settlement agreement.

{¶9} While the second motion to remove Maureen as James's guardian was still pending, the siblings also filed a motion seeking a court order requiring Maureen to pay James's monthly expenses. They also moved the probate court to change James's social security representative payee from Maureen to Mary Anne. On July 24, 2020, the magistrate granted the application for payment of monthly expenses, but held the motion to remove Maureen as social security representative payee in abeyance.

{¶10} On September 22, 2020, the siblings filed a third motion to show cause and a supplemental memorandum to remove Maureen as guardian. The motion asserted that Maureen had failed to make the July 24, 2020 court-ordered payments to cover James's monthly expenses.

*Second Settlement Agreement*

**{¶11}** On December 2, 2021, the parties again entered into a settlement agreement, this time naming Maureen and Suzanne James's co-guardians. The second settlement agreement also provided that: (1) James would remain at the family home with Mary Anne; (2) the co-guardians and Mary Anne would cooperate with each other in caring for James; (3) Maureen would provide Suzanne with statements of James's financial accounts within 14 days of a written request; and (4) the prevailing party would be entitled to recover reasonable attorney fees in the event of a breach of the agreement.

*Removal and Attorney-Fees Motions*

**{¶12}** On March 8, 2022, the siblings filed a motion to remove Maureen as co-guardian and for attorney fees. As grounds for the motion, the siblings alleged that Maureen refused to timely provide requested account statements, that she falsified portions of a co-guardian report to the court, and that she intentionally scheduled James's medical appointments to conflict with Suzanne's employment.

**{¶13}** On April 4, 2022, Maureen filed a motion to strike the siblings' motion to remove her and a memorandum in opposition. Maureen disputed the claims against her and argued that the siblings were in violation of the settlement agreement. More specifically, Maureen asserted that, since the December 2019 settlement agreement, she had been unable to take James on vacation and had not been allowed to visit with him. She further alleged that Mary Anne had failed to inform her of James's doctor's appointments and had prevented James from participating in family counseling. Like the siblings, Maureen also requested attorney fees.

{¶14} The probate court conducted an evidentiary hearing on the motion to remove Maureen as James's guardian and social security representative payee on July 21, 2022. The record does not contain a transcript of this hearing. But the magistrate's August 23, 2022 decision resolving the motions indicates that both Maureen and Suzanne testified at the hearing. According to that decision, Suzanne testified that Maureen had violated the second settlement agreement by failing to disclose bank statements within 14 days after Suzanne requested them. Suzanne also testified that, when she did finally receive the bank statements, they were redacted. In addition, Suzanne explained that she signed a co-guardian report to be filed with the probate court, but the report Maureen ultimately filed was not the same one that Suzanne had signed.

{¶15} The magistrate's August 23, 2022 decision also cited to Maureen's testimony. According to the magistrate, Maureen admitted that she added a narrative to the co-guardian report without notifying Suzanne of the modification. Maureen also testified that she was not concerned about court protocol and was unable to explain why she would not spend James's money on things that he liked to do.

{¶16} In the August 23, 2022 entry, the magistrate concluded that Maureen lacked regard for court procedures, altered a guardian's report, withheld doctor's appointments from James's co-guardian, failed to provide requested bank statements as required by the second settlement agreement, failed to complete requested withdrawals to provide money for things James requested, and withheld information about James's finances from James and the siblings. The magistrate further found that Maureen failed to exercise due diligence when making decisions in the best interest of James, was unwilling to cooperate with James's co-guardian, failed to obey

6

court orders, and had acted in a manner adverse to James's best interest. The magistrate therefore granted the motion to remove Maureen as co-guardian. The magistrate also granted the request to change James's social security representative payee and appointed Suzanne to that role, although the magistrate acknowledged that the Social Security Administration would make the final determination of who James's representative payee would be.

**{¶17}** Maureen did not object to the magistrate's August 23, 2022 decision removing her as James's guardian and the probate court adopted the magistrate's decision.

**{¶18}** Once Maureen had been removed from her guardianship role, the siblings filed a series of motions to remove her from James's financial dealings as well. On February 28, 2023, the siblings sought to enforce the magistrate's August 23, 2022 order removing Maureen as James's social security representative payee. In a March 14, 2023 entry, the magistrate required Maureen to resign from this role. The siblings also moved to remove Maureen from her position as James's designated advocate with the community fund, and the magistrate granted this request on May 3, 2023. Later, on May 11, 2023, the siblings further sought Maureen's removal as custodian of James's bank accounts and stable accounts. The magistrate agreed, and Maureen objected. On September 11, 2023, the probate court denied Maureen's objection to the magistrate's July 14th order removing her from James's bank accounts.

**{¶19}** The siblings also sought an award of attorney fees under the fee-shifting provision in the second settlement agreement. On May 8, 2023, the magistrate granted the motions for attorney fees. For their representation of the siblings, the law firm of Lindhorst & Dreidame was awarded $48,649.37, and the law firm of Dinsmore

& Shohl was awarded $11,772.50. Maureen objected to the magistrate's decision, but on August 7, 2023, the probate court denied Maureen's objection and adopted the magistrate's attorney-fees award.

{¶20} Maureen now appeals from the probate court's September 11, 2023 order removing her from James's financial accounts and from the August 7, 2023 order ordering Maureen to pay the siblings' attorney fees.

### *Assignments of Error*

{¶21} Representing herself on appeal, Maureen raises two assignments of error. First, Maureen argues that the probate court erred in removing her as the trustee of the James Dwyer Special Needs Trust, as James's designated advocate, and from his stable and bank accounts. Second, Maureen asserts that the probate court erred by awarding attorney fees, because she contends the siblings also breached the second settlement agreement.

### *Removal*

{¶22} In her first assignment of error, Maureen takes issue with the probate court's decision to remove her from various accounts established to manage James's finances. We consider each type of account separately.

#### *A. The James Dwyer Special Needs Trust*

{¶23} Both in her briefing and in oral argument, Maureen requests that we allow her to remain trustee of the James Dwyer Special Needs Trust. Even if we were to agree with Maureen, we lack jurisdiction to issue such an order, as the probate court has not actually removed her from this role. Thus, there is nothing for us to review in this regard.

8

{¶24} It is true that the magistrate's August 23, 2022 decision removed Maureen as James's guardian and social security representative payee. But neither this entry nor any other of the probate court alters Maureen's status as trustee of the James Dwyer Special Needs Trust. As such, this matter remains pending in the probate court.

{¶25} Were we to express an opinion as to whether Maureen *could* be removed as trustee of the Special Needs Trust, such an opinion would merely be advisory. And appellate "courts will not issue advisory opinions." *State ex rel. Kline v. Newton Falls Village Council*, 11th Dist. Trumbull No. 2023-T-0052, 2023-Ohio-3841, ¶ 11.

{¶26} We therefore dismiss this portion of Maureen's appeal numbered C-230533.

### B. Designated Advocate

{¶27} Maureen next challenges the magistrate's May 3, 2023 decision removing her as the community fund designated advocate. However, Maureen failed to object to the magistrate's decision in accordance with Civ.R. 53. As a result, Maureen waived any challenge to the magistrate's findings. *See* Civ.R. 53(b)(i). Maureen also failed to appeal this decision within the timeframe established under App.R. 3, thus further waiving the issue for our review. *See Taneff v. Lipka*, 2019-Ohio-887, 124 N.E.3d 859, ¶ 34 (10th Dist.).

{¶28} Because Maureen failed to object to the magistrate's decision and failed to file a timely appeal from the order removing her as designated advocate, we overrule this portion of Maureen's first assignment of error.

9

*C. Stable and Bank Accounts*

**{¶29}** Maureen also argues that the probate court erred in removing her from James's stable and bank accounts.

**{¶30}** A probate court's decisions involving guardianships will not be reversed on appeal absent an abuse of discretion. *Garber v. Schneider*, 1st Dist. Hamilton No. C-210568, 2022-Ohio-1777, ¶ 38. Because the probate court is the "superior guardian," other guardians must obey all probate court orders. *Id.*, citing R.C. 2111.50(A)(1) ("At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships.").

**{¶31}** R.C. 2109.04 governs the removal of a fiduciary. In pertinent part, R.C. 2109.04 states that "[t]he court may remove any fiduciary * * * for * * * neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, * * * or estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law." "The removal of a fiduciary under R.C. 2109.24 is within the sound discretion of the trial court, and a reviewing court will not reverse that decision unless the lower court has abused its discretion." *In re Guardianship of Burrows*, 11th Dist. Portage No. 2006-P-0118, 2007-Ohio-4764, ¶ 28. A decision to remove a fiduciary need only be based on the ward's best interests. *Id.* At ¶ 43.

**{¶32}** Here, the probate court validly exercised its discretion in removing Maureen from the stable and bank accounts. In its August 23, 2023 order removing Maureen as guardian, the probate court specifically found that Maureen had: (1) failed to provide bank statements when requested, which violated the second settlement

agreement; (2) failed to withdraw funds from the community fund so that items could be purchased for James; and (3) withheld information about James's finances from him and his siblings. The probate court further expressed its concern by noting that the money Maureen withheld "could be used to enhance [James's] quality of life." From these actions, it concluded that Maureen was not acting in James's best interest and had failed to obey court orders. Maureen neither objected to nor appealed the August 23, 2023 order. Thus, we lack any basis to question its applicability.

**{¶33}** In light of its previous findings that Maureen breached the second settlement agreement and did not act in James's best interests, the probate court did not abuse its discretion when it removed Maureen from the stable and bank accounts. We therefore overrule Maureen's first assignment of error.

*Attorney Fees*

**{¶34}** In her second assignment of error, Maureen argues that the trial court abused its discretion in ordering her to pay Lindhorst & Dreidame $48,649.37 and Dinsmore & Shohl $11,772.50 in attorney fees. In their brief, the siblings argue that this issue is now moot because both attorney-fees orders have been satisfied in full. Maureen does not dispute that the judgments have been paid through a garnishment, nor does she present evidence that she requested a stay of the attorney-fees orders pending this appeal.

**{¶35}** It is a well-established principle of law that a satisfaction of judgment renders an appeal from that judgment moot where the judgment is voluntarily paid. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990). A party is deemed to have acted voluntarily in satisfying a judgment when the party fails to seek a stay prior to the order being paid. *See Reliable Credit Assn. v. SAFA, Inc.*, 12th Dist.

11

Butler No. CA2018-11-223, 2019-Ohio-2492, ¶ 17. Where a judgment has been satisfied through garnishment and the appellant failed to seek a stay, the appeal is moot and must be dismissed. *McCormick v. Luke Collison Drywall & Constr. LLC*, 5th Dist. Fairfield No. 2021 CA 00036, 2022-Ohio-4260, ¶ 47.

**{¶36}** The record in this matter is clear that the attorney-fees orders Maureen seeks to appeal have been paid. The record is also clear that Maureen did not seek a stay of execution, either before the probate court or from this court. As a self-represented litigant, she may not have had actual knowledge of these remedies. Nonetheless, self-represented parties are held to the same standards as all other litigants under Ohio law. *See Fleming v. Shelton*, 8th Dist. Cuyahoga No. 108660, 2020-Ohio-1387, ¶ 9. Because the judgments Maureen seeks to appeal were satisfied through garnishment, Maureen's second assignment of error is now moot, and we dismiss the appeal numbered C-230462.

### *Conclusion*

**{¶37}** For the foregoing reasons, we overrule Maureen's first assignment of error in part, dismiss the part of her appeal numbered C-230533 relating to the James Dwyer Special Needs Trust, dismiss as moot the appeal numbered C-230462, and affirm the judgments of the probate court.

Judgment accordingly.

**BOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.