[Cite as *Hunt v. Hunt*, 2024-Ohio-5355.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

MICHELLE LYNN HUNT

    Appellee

    v.

WILLIAM CARL HUNT

    Appellant

C.A. No.     23CA011972

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    17DU083698

DECISION AND JOURNAL ENTRY

Dated: November 12, 2024

CARR, Judge.

**{¶1}** Plaintiff-Appellant William Carl Hunt ("Husband") appeals the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

**{¶2}** Husband and Defendant-Appellee Michelle Lynn Hunt ("Wife") were married August 24, 2002.[1] Two children were born of the marriage, both of whom are no longer minors. Following a domestic violence incident perpetrated by Husband, in November 2017, Husband filed a complaint for divorce. Wife and the children remained in the marital home.

**{¶3}** On January 29, 2018, an entry was filed, signed by both parties, indicating that they had agreed that Husband would continue to pay the mortgage and utilities for the marital home. In addition, it was agreed that Husband would deposit $500.00 per month into the joint account

---

[1] While the trial court listed August 23, 2003, as the date of the marriage in the prior decree, at the most recent hearing, the parties stipulated that the correct date was August 24, 2002.

for Wife to use for food and the living necessities of Wife and the children. On October 11, 2018, the magistrate filed an entry following a hearing on "contested further temporary orders[.]" Therein, the magistrate ordered Husband to pay Wife $900.00 per month as temporary support.

{¶4} A trial was held over multiple days in 2019, but the trial court's entry of judgment was delayed until December 2020, by the global pandemic and the inability to hold an in camera interview with the children. As part of that judgment, Wife was named the residential parent and legal custodian of the children, was awarded spousal support, and the assets and liabilities of the parties were divided.

{¶5} Husband appealed and Wife cross-appealed. This Court sustained two of Wife's assignments of error, inter alia, determining that the sum of $10,000 which came from Wife's mother and was used towards the down payment on the marital residence was a gift to Wife and Wife's separate property. *See Hunt v. Hunt*, 2022-Ohio-412, ¶ 15-16 (9th Dist.). In addition, this Court sustained one of Husband's assignments of error, concluding that the trial court was obligated to consistently determine the valuation of marital assets using the dates of the marriage, and that it failed to do so when it utilized a 2019 valuation of the marital home as opposed to a November 2017 valuation. *See id*. at ¶ 20. We determined that, "[o]n remand, the trial court must take evidence on the value of the martial home in November 2017, recalculate the marital mortgage pay down, and make any necessary adjustments to the property division to allow for an equitable division of the marital property." *Id.*

{¶6} In July 2022, the trial court held an evidentiary hearing to address the issues before it due to the remand. The trial court issued a judgment entry in February 2023.

{¶7} Husband has appealed, raising four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT RESERVE JURISDICTION TO MODIFY OR AMEND SPOUSAL SUPPORT AFTER EVIDENCE SHOWED A FLUCTUATION OF INCOME OF THE PARTES AND A MARRIAGE OF 18 YEARS.

**{¶8}** Husband argues in his first assignment of error that the trial court erred in failing to reserve jurisdiction to modify or amend spousal support.

**{¶9}** "As a general rule, a spousal support award is reviewed for an abuse of discretion." *Ostry v. McCarthy*, 2021-Ohio-2228, ¶ 20 (9th Dist.), quoting *Lee v. Lee*, 2019-Ohio-61, ¶ 8 (9th Dist.). "However, challenges to factual findings can necessitate that the Court evaluate the weight of the evidence." *See Ostry* at ¶ 20.

**{¶10}** "'A trial court must consider the factors set forth in R.C. 3105.18(C)(1)(a)-(n) "[i]n determining whether spousal support is appropriate and reasonable," and in determining the nature, amount, terms, and duration of a spousal support payment.'" *Ostry* at ¶ 21, quoting *Lee* at ¶ 9, quoting R.C. 3105.18(C)(1).

**{¶11}** Here, the parties were married for 15 years, and the trial court awarded Wife $1210.09 in spousal support for a term of 24 months beginning March 1, 2023. The entry provided that spousal support was subject to termination upon the happening of any of the following events: (1) the death of either party; (2) the remarriage or cohabitation in a state equivalent to marriage of Wife; (3) the permanent disability of Husband; (4) the expiration of 24 months.

**{¶12}** On appeal, Husband argues that the trial court erred in failing to reserve jurisdiction to modify or amend spousal support when Husband's income fluctuated. In so doing, Husband points to case law indicating it is unreasonable to award spousal support for definite periods of relatively long duration without reserving jurisdiction to modify the amount if there is a change of

circumstances. *See Bailey v. Bailey*, 2020-Ohio-4333, ¶ 8 (6th Dist.). Here, the spousal support award was for 24 months, a period of time that is more than half over at the time of this decision given that Husband did not move to stay the judgment pending this appeal. It is difficult to conclude that the spousal support award here was for a "relatively long duration[.]" *Bailey* at ¶ 8; *see also Herron v. Herron*, 1996 WL. 734007, *3 (7th Dist. Dec. 18, 1996) (noting that a spousal support award of a duration of less than six years was "short time period"). Further, the entry provides that the award could be terminated if Husband became permanently disabled, among other specified conditions.

{¶13} Although this Court suggests the better practice would be for a domestic relations court to reserve jurisdiction with a spousal support award for potential change of circumstances, Husband has not demonstrated that the trial court abused its discretion in failing to reserve jurisdiction to modify or amend the spousal support award of a duration of two years here.

{¶14} Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT AWARDED APPELLEE SPOUSAL SUPPORT BOTH AS TO AMOUNT AND DURATION.

{¶15} Husband essentially argues in his second assignment of error that the trial court abused its discretion in awarding any spousal support to Wife in light of the temporary support payments he made over the course of five years and the circumstances of the parties.

{¶16} R.C. 3105.18(C)(1) states:

In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶17} Here, while the trial court did not go into a detailed discussion of the factors, it noted that it had considered all relevant factors, the property settlement, and the temporary support paid during the proceedings. It found that both parties were capable of working full-time jobs and that Husband had been the source of income for the parties and their children. Husband had a

GED and Wife had a college degree. In 2017, Husband's income was $114,039.20. While Husband's income did fluctuate, his income in 2018 and 2021 was well over $100,000.

{¶18} Prior to the marriage, Wife worked as a project manager in land development making approximately $62,000 per year. After that employment ended and the parties married, Wife indicated that they agreed that Wife would stay home and raise the children. Wife testified that it would have been impossible for her to work, particularly when the children were younger, as one of the children was diagnosed with autism and the other child also had mental health diagnoses. In addition, Husband traveled frequently for work.

{¶19} Wife returned to work in 2017 as a substitute teacher and later worked as a paraprofessional in a school until her contract ended. The trial court did find Wife to not be diligent in obtaining full-time employment during the divorce proceedings and concluded that, at a minimum, Wife could work a minimum wage job.

{¶20} At the time of the remand hearing in July 2022, Wife was working as a qualified intellectual developmental professional; she was hired in that position in October 2021, with a salary of $40,000, which fluctuated. Wife asserted that she had tried to obtain employment in her prior career and, despite repeated attempts, was unsuccessful; Wife maintained she would need to update her skills in order to obtain employment in land development.

{¶21} The trial court specifically indicated that it took into account the fact that Husband was paying temporary support and/or household expenses since November 2017. The trial court found Husband's testimony credible that he paid on average between $2,000 to $3,000+ per month while the case was pending. As mentioned above, Husband paid the mortgage, utilities, and certain other expenses, along with providing Wife with $900 in cash per month. That support was not separated into child and spousal support, and instead, was all designated as temporary support.

{¶22} The trial court further noted that Husband had a retirement account while Wife did not and that Wife would need to supply her own health insurance when the proceedings terminated, a cost approximating $900 per month.

{¶23} Moreover, it is evident to this Court that the trial court did take into account the fact that Husband continued to pay the amounts required under the temporary orders while this matter was initially appealed and during the remand. The trial court's original divorce decree required Husband to pay $2,330.73 in spousal support for 45 months, whereas the current decree only requires a payment of 1,210.09 per month for 24 months. Notably, at the original trial, Husband was asked what would be a reasonable amount of spousal support for Wife to receive and he did not indicate zero; instead, he asserted $900.00 per month would be reasonable.

{¶24} It is apparent that Husband is bothered by the length of time that he had to pay for temporary orders due to the length of the proceedings, which were interrupted by a global pandemic, and included an appeal and remand. However, Husband has not asserted, nor does the record support, that Husband made any attempt subsequent to the entry of the original decree to have the temporary orders modified. In fact, he remained subject to them because he sought and received a stay of the original judgment during the appeal.

{¶25} "Courts have acknowledged that the purpose of temporary support is to preserve the status quo during the proceeding." (Internal quotations and citations omitted.) *Peters v. Peters*, 2004-Ohio-2517, ¶ 7 (9th Dist.). Here, the support that was being provided was for not only Wife, but also the parties' children.

{¶26} Overall, while this Court may not have ordered the same amount of spousal support or the same duration, we cannot say that Husband has demonstrated that the trial court abused its discretion in ordering the award it did.

**{¶27}** Husband's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DETERMINED THAT APPELLANT'S INTEREST IN MARITAL REAL ESTATE WAS LIMITED TO $18,422.25.

**{¶28}** Husband argues in his third assignment of error that the trial court erred in determining that Husband's interest in the marital real estate was $18,422.25.

**{¶29}** "During divorce proceedings, a trial court must determine what property constitutes marital property and what constitutes separate property." *Hunt*, 2022-Ohio-412, at ¶ 6, citing R.C. 3105.171(B). "[T]he classification of property as marital or separate is a fact-based determination that this Court reviews under the manifest weight of the evidence standard." *Id.* at ¶ 7.

**{¶30}** On remand, the trial court was charged with "tak[ing] evidence on the value of the martial home in November 2017, recalculat[ing] the marital mortgage pay down, and mak[ing] any necessary adjustments to the property division to allow for an equitable division of the marital property." *Id.* at ¶ 20.

**{¶31}** The property at issue was purchased in 1998 for $208,000. Wife and Wife's mother were originally listed on the deed. As was established in the first hearing and appeal, Wife supplied the entirety of the $21,379.74 down payment. *See id.* at ¶ 15-16. That sum represents her separate property. *See id.* The property was refinanced in 2005; at that time, Wife's mother quit claimed her interest and Husband was added to the deed. The property was then valued at $233,800. In the original decree, the trial court concluded that this passive appreciation – from $208,000 to $233,800 – also represented Wife's separate property. *See id.* at ¶ 11. Thus, the trial court in the original decree determined that Wife's separate interest was $47,179.74, a figure that the trial court again used in the current judgment entry.

**{¶32}** On appeal, Husband asserts that the trial court awarded Wife, as her separate property, the passive appreciation that occurred over the course of the party's marriage, and that to do so was erroneous. As explained above, the trial court awarded Wife the passive appreciation that occurred from 1998 until 2005. In Husband's briefing in the prior appeal, and in the current appeal, Husband agreed that the home became a marital asset in 2005. Further, in the prior appeal, Husband never challenged the trial court's finding in the original decree that the passive appreciation from 1998 until 2005 represented Wife's separate property. Accordingly, Husband cannot challenge that finding now. *See Brunswick Hills Twp. v. Brunswick*, 2008-Ohio-3198, ¶ 8 (9th Dist.) ("The law of the case doctrine precludes Brunswick Hills from arguing to this Court, in a subsequent appeal, anything that could have been argued during the first appeal.").

**{¶33}** The parties stipulated at the July 2022 hearing that the value of the house in November 2017 was $244,210 and the outstanding principal balance at that time was $160,185.77. Thus, the equity in the house as of November 2017 was $84,024.23, as the trial court calculated. The trial court then took into account Wife's separate property interest of $47,179.74 and appropriately determined that Husband's martial interest in the property as of November 2017 was $18,422.25.

**{¶34}** Husband goes on to make additional arguments essentially contending that he should have received credit for payments he made after the November 2017 date. However, such arguments do not really address what Husband's interest was in the marital real estate and instead relate to whether the overall division of assets and liabilities was equitable. Such arguments are outside the scope of Husband's stated assignment of error and will not be addressed. *State v. Curley*, 2024-Ohio-1031, ¶ 14.

**{¶35}** Husband's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT USED
THE FIGURES OF $21,000.00 WHEN IT DETERMINED THE APPLICABLE
CHILD SUPPORT DUE FROM THE APPELLANT TO THE APPELLEE[.]

**{¶36}** Husband argues in his fourth assignment of error that the trial court erred in the income figure it used for Wife in calculating child support.

**{¶37}** This Court declines to address this assignment of error as it has been rendered moot. "It is a well-established principle of law that a satisfaction of judgment renders an appeal from that judgment moot where the judgment is voluntarily paid. A party is deemed to have acted voluntarily in satisfying a judgment when the party fails to seek a stay prior to the order being paid." (Internal quotations and citations omitted.) *In re Guardianship of Dwyer*, 2024-Ohio-2544, ¶ 35 (1st Dist.); *see also Empace Equip. Corp. v. Maximus Consulting, L.L.C.,* 2015-Ohio-1801, ¶ 6 (9th Dist.).

**{¶38}** Here, Husband did not move to stay the judgment pending this appeal. Further, a review of the trial court's docket reveals that child support terminated in July 2023, after the youngest child turned 18 and graduated high school, and Wife's briefing supports that Husband paid the child support due in the short interim between when the judgment was filed and the support terminated.

**{¶39}** In light of these unique circumstances, Husband's fourth assignment of error will not be addressed as it has been rendered moot.

III.

**{¶40}** Husband's first through third assignments of error are overruled. His fourth assignment of error is moot. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DAVID J. BERTA, Attorney at Law, for Appellant.

MICHELLE L. HUNT, pro se, Appellee.